UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | | |
|---|---|---|
| KERRI VARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 04-389-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JO ANNE BARNHART, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Kerri Varney ("Varney") and Defendant Jo Anne Barnhart, the Commissioner of Social Security ("Commissioner"). [Record Nos. 9 and 10] Through this action, Varney seeks to reverse the decision of the Commissioner that she is not entitled to disability insurance benefits and supplemental security income under the Social Security Act. However, the Commissioner contends that the final decision of the agency is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Varney.

**I.    LEGAL STANDARD**

A claimant's social security disability determination is made by an ALJ in accordance with a five-step analysis. If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability

application. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, a claimant must show that she suffers from a severe impairment. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual functional capacity ("RFC") and relevant past work to determine if she can do past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).[1]

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002), (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the

---

[1] Pursuant to 68 Fed. Reg. 511161-62, the Commissioner has changed the lettering of the relevant Code of Federal Regulations. What was previously 20 C.F.R. §§ 404.1520(e) and (f) are now 20 C.F.R. §§ 404.1520(f) and (g), respectively.

correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence.

## II.    PROCEDURAL HISTORY

Varney filed an application for disability insurance benefits and supplemental security income on June 18, 2002. She alleges an onset date for her alleged disabilities of March 1, 2002. These claims were denied initially and upon reconsideration. An administrative hearing on these claims was held before ALJ Don C. Paris in Prestonsburg, Kentucky, on September 16, 2003. On November 25, 2003, ALJ Paris issued a decision holding that the Claimant was not entitled to benefits under these applications. [See Administrative Transcript ("Tr."), pp. 16-27]

At the time of the administrative hearing, Varney was thirty-one years old. She has a college education and training as a speech therapist. Varney has prior work experience in this area within the school systems in Kentucky. She alleges that she became disabled as a result of kidney problems, nerves, anxiety and low back pain. Due to an apparent chemical imbalance, Varney suffers from bouts of kidney stones. However, this condition is controlled with medication. In addition, she receives medication for pain which makes it difficult to drive and engage in her chosen occupation. On top of this, her kidney problems also require that she take frequent bathroom breaks during work hours and at night.

After considering the medical evidence presented, the claimant's testimony and the testimony of a vocational expert, Melissa Glannon, ALJ Paris concluded that Varney suffers from a number of impairments which prevent her from performing her past work. More specifically, ALJ Paris found that:

> The claimant has kidney dysfunction, chemical imbalance causing kidney stones, status post right and left uretheral stent insertion and extraction and ureteroscipic calculus extractions and dilation; low back pain, and an atypical anxiety disorder and pain disorder; impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

[Tr., at p. 26] Notwithstanding this finding, the ALJ determined that the identified impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 and that she retained the residual functional capacity to perform a significant number of jobs existing in the national economy. According to ALJ Paris,

> 7. The claimant has the following residual functional capacity: The claimant has a kidney dysfunction and experiences low back pain and she would be limited to medium exertional work; occasional lifting 50 pounds; frequently 25 pounds; stand/walk 6 hours; sit 6 hours; and because of her kidney problems and bladder spasms, she would need reasonable access to a bathroom; she also suffers fro an atypical disorder and a pain disorder associated with psychological factors and a general medical condition; *she is not significantly limited to moderately limited to maintain attention and concentration for extended periods; she is moderately limited in her ability to perform activities within a schedule; interact appropriately with the general public; to complete a normal workday and workweek and to respond appropriately to changes in the work setting; however, she has the mental capacity to understand, retain and carry out at least simple, repetitive work tasks; relate adequately with co-workers and supervisors; and to adapt to routine changes in the work environment*; and she would have limited contact with the general public.

[Tr., p. 26] For purposes of the present action, the focus on the ALJ's decision is upon the findings highlighted above.

### III.     DISCUSSION

Varney's argues that ALJ Paris' decision is not supported by substantial evidence because he failed to explain why the opinion of a consulting psychologist was not adopted in full. More particularly, the claimant asserts that there is a significant difference in the above finding and the report of Stuart Cooke, Ph.D., which provides in relevant part that

> I believe [Varney's] ability to understand, retain and follow instructions is fair. Her ability to relate to other people is fair. Her ability to maintain attention and concentration would be fair. *Her ability to tolerate the stress and pressures associated with day to day work activity would be poor*. . . .

[Tr., p. 244]

According to Varney's counsel, under Social Security Ruling 96-8p, "the RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Varney argues that this rule was violated here because the RFC adopted by ALJ Paris conflicted with Dr. Cooke's assessment that her ability to tolerate workplace stress and pressure was be poor. However, as explained more fully below and contrary to Varney's assertions, the ALJ fully explained and discussed Dr. Cooke's conclusions and opinions together with other medical evidence bearing on this issue.

After reviewing ALJ Paris' decision, it is clear that the ALJ reviewed and discussed all relevant evidence presented, including the report of Dr. Cooke. Dr. Cooke's report appears at pages 338-44 of the administrative record. ALJ Paris discusses and summarizes this report throughout his decision. For example, at page 2 of his decision, the ALJ relies upon Cooke's report in concluding that Varney has a severe mental impairment. [Tr. 20] Further, and perhaps

more importantly, the ALJ references this report in addressing the "B" criteria of Listings 12.06 and 12.07. After concluding that Varney has "mild to moderate" limitations in the areas of "activities of daily living" [*i.e.*, the first area of "B" criteria] and "social functioning" [i.e., the second area of "B" criteria], the ALJ determined that she suffered "moderate" limitation in the area of "concentration, persistence and pace" [*i.e.*, the third area of the "B" criteria].

> The third "B" criteria, "concentration, persistence and pace" refers to the ability to sustain focused attention sufficiently long enough to permit timely completion of tasks commonly found in work settings. *Dr. Cooke noted that her ability to maintain attention and concentration would be fair. Her ability to tolerate the stress and pressures associated with day to day work activity would be poor.* She has the ability to manage her own money. (Exhibit 10F). I rate the claimant's level of functioning in this area as "moderate".

(Emphasis added.) [Tr., p. 21] In addition to the A and B criteria, the ALJ concluded that Varney did not meet the final C criteria because no evidence was presented that her alleged mental illness caused an inability to function independently outside the area of her home. [Tr., p. 21]

The ALJ's credibility assessment also supports his ultimate conclusion regarding Varney's mental status. At page 5 of his report, ALJ Paris states, "I find that the credibility of the claimant's subjective complaints (and alleged related functional limitations) to be poor" based on evidence and testimony presented for his evaluation. After outlining the items of evidence supporting his determination, the ALJ determined that "[g]iven all of the above, the undersigned concludes that the claimant's allegations of disabling pain and physical complaints with corresponding limitations are deemed excessive, not fully credible and are treated accordingly." [Tr., p. 23]

And after discussing issues of credibility, the ALJ again outlines the medical and other evidence presented in support of Varney's claims in reaching his final determination regarding her functional limitations.

> The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CFR 404.1527 and 416.927 and Social Security Ruling 96-2p and 96-6p). Calixto Hernandez, M.D., a state agency nonexamining medical record reviewer, reported in September 2002 that the claimant had no physical impairments which would limit her work activities (Exhibit 9F).  Two state agency psychologists and medical record reviewers, prepared mental residual functional capacity assessments and determined that the claimant is "not significantly limited to moderately limited" in her ability to maintain attention and concentration for extended periods; "moderately" limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal work weekday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting (Exhibits 12F and 15F).  *Stuart Cooke, Ph.D., an agency consultative psychologist, evaluated the claimant in November 2002.  He noted that the claimant's ability to understand, retain and follow instructions is fair.  Her ability to tolerate the stress and pressures associated with day to day work activity would be poor. (Exhibit 10F).*

(Emphasis added.)  [Tr. 23-24]  Thus, the ALJ reached his ultimate conclusion based upon all the evidence presented, including the report of Dr. Cooke.

As the Commissioner correctly notes, the vast majority of evidence provided by the claimant relates to her physical condition (*i.e.*, kidney stones, urinary tract complaints, low back pain).  And while one report prepared by Dr. Subhash Vyas in July 2002 diagnosed Varney as suffering from anxiety, the records are devoid of other similar references.  In addition, Dr. Vyas did not indicate that the claimant had any mental limitations or that she would suffer any adverse

side effects from the prescribed medication. Further, while the records do not support Varney's assertion that mental health treatment was recommended, there is no indication that the claimant followed-up with such treatment.

Notwithstanding the lack of prior mental health treatment, Varney's assertion that the ALJ erred by failing to adopt (or further discuss) Dr. Cooke's opinion regarding her functional limitation is misplaced. Based on Cooke's report and other medical evidence, ALJ Paris concluded that Varney suffered a severe mental impairment. However, it is the role of the ALJ to determine whether a claimant's mental condition prevents him or her from performing jobs identified by a VE. 20 C.F.R. §§ 404.1546(c), 416.946(c). In this case, the psychological consultants who considered all the relevant evidence (included Dr. Cooke's report) concluded that the claimant's limitations were identical to those found by the ALJ. These reports constitute substantial evidence which supports his decision with respect to Varney's mental limitations.[2]

### IV. CONCLUSION

Based on the analysis set forth above, the Court concludes that the ALJ's decision – which is the final decision of the Commissioner – is supported by substantial evidence. Accordingly, it is hereby **ORDERED** as follows:

(1) The Claimant's Motion for Summary Judgment [Record No. 9] is **DENIED**;

---

[2] The Commissioner also notes that Dr. Cooke's report would not be entitled to any significant weight. Instead, the weight afforded a medical source's opinion on the issue of the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source has with the claimant, the evidence the medical source presents to support his or her opinion, how consistent the opinion is with the record as a whole, the speciality of the medical source, and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Here, while Dr. Cooke is an expert in the area, the other listed factors do not favor giving his opinion any significant weight.

(2) The Commissioner's Motion for Summary Judgment [Record No. 10] is **GRANTED**; and

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 14th day of June, 2005.

Signed By:
*Danny C. Reeves* DCR
United States District Judge